# LAMBERT v. BARRETT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF NEW JERSEY.

No. 928.   Submitted March 25, 1895. — Decided April 15, 1895.

The contention that petitioner cannot be made to pay the penalty for the
crime of which he was adjudged guilty, because he was not executed at
the time originally designated, was not sustained by the chief justice of
the State nor by the associate justice of its Supreme Court, to whom,
severally, he applied, and their action is not open to review here.
An appeal will not lie from an order of a Circuit Judge at chambers.

THEODORE LAMBERT presented to one of the judges of the
Circuit Court of the United States for the third circuit, at
chambers, on December 28, 1894, his petition for *habeas corpus*,
which alleged that he was restrained of his liberty by the
sheriff of Camden County, New Jersey, under a reprieve
granted by the governor of that State December 4, 1894,
whereby the execution of a certain judgment of the Court of
Oyer and Terminer and general jail delivery of the county
aforesaid, entered October 13, 1894, was suspended until Jan-
uary 3, 1895.   The petitioner alleged that he was convicted
June 15, 1894, of the murder of William Kairer in said court,
and on October 13 was sentenced to be hanged December 13;
that, afterwards, on November 19, application was made to
the chancellor of the State of New Jersey for a writ of error
to remove the judgment and the proceedings therein to the
Supreme Court of New Jersey, which was denied; that De-
cember 4, application was made to the governor for a reprieve
to suspend the execution of the judgment, which reprieve was
granted on that day, and thereby the execution of the man-
date of the court was suspended until January 3.   Petitioner
further showed that on the twenty-second day of December
the governor issued a death warrant to the sheriff of Camden
County, commanding him to execute petitioner on the third
day of January next; and charged that his imprisonment was
illegal in that the governor had no jurisdiction, warrant, or

authority under the laws of the State to grant said reprieve, and that the day and time having passed for the execution of the sentence of the court, "it is supposed to have been done in law, and if not, then said judgment and execution is nil, illegal, and cannot now be lawfully carried into effect."

The petition further alleged that by the judgment and sentence of the court, petitioner had been and was now under sentence of death and unlawfully restrained of his liberty and detained in jail; that under section 9 of article V of the Constitution of that State, the governor had no prerogative, right, or authority to grant the reprieve or issue the death warrant, and that the same was illegal and unlawful, and in violation of the Constitution of the United States and of the State of New Jersey; but that by virtue of the death warrant the sheriff intended to execute petitioner on the third day of January next. And it was futher averred that on the twenty-second day of December application was made to one of the justices of the Supreme Court of Judicature of the State of New Jersey for a writ of *habeas corpus*, to be relieved of the unlawful restraint of his liberty, and that the application was denied, and petitioner was refused an appeal from the same contrary to the Federal and state constitutions; that on the twenty-fourth of December an application was made to the chief justice of said Supreme Court for a writ of *certiorari* to review the death warrant issued by the governor, and that the same was refused, and an appeal from said refusal and a hearing therein was denied, contrary to and in violation of said constitutions. And petitioner alleged that by the action of said justices of the Supreme Court of the State in refusing him relief in the premises he had been deprived of his rights as a citizen of the United States and the protection of its laws, and in like manner deprived of his liberty and was about to be deprived of his life. Petitioner, therefore, prayed that he might be forthwith brought before the Circuit Court by virtue of the writ of *habeas corpus* and be discharged from custody.

The Circuit Judge to whom the petition was presented, upon consideration thereof and the matters therein set forth, refused

to issue the writ; whereupon an appeal from the order denying the application was allowed.

*Mr. John L. Sample* for appellant.

*Mr. Wilson H. Jenkins* for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

This appeal must be dismissed for want of jurisdiction. The constitution of New Jersey provides that the governor shall have power "to grant reprieves to extend until the expiration of a time not exceeding ninety days, after conviction." Art. V, § 9; 2 Charters and Constitution, 1318. The verdict was returned June 15. Sentence was passed October 13, and a reprieve for thirty days was granted December 4, 1894. Appellant contends that the word "conviction" relates to the verdict of the jury and not to the sentence of the court, and that, therefore, the governor had no power to grant the reprieve, nor subsequently to issue the warrant of execution. But the contention that petitioner cannot be made to pay the penalty for the crime of which he was adjudged guilty, because he was not executed at the time originally designated, by reason of the interposition of the governor at his instance, which petitioner alleges was, as matter of construction of the state constitution, unauthorized, was not sustained by the chief justice of the State nor by the associate justice of its Supreme Court, to whom, severally, he applied, and their action is not open to review here. With the disposition of state questions by the appropriate state authorities, it is not the province of this court to interfere, and there is no basis for the suggestion of any violation of the Constitution of the United States; the denial of due process of law; or deprivation of any right, privilege, or immunity secured to him by the Constitution or laws of the United States. *Hallinger* v. *Davis,* 146 U. S. 314; *In re Kemmler,* 136 U. S. 436; *Caldwell* v. *Texas,* 137 U. S. 692; *In re Converse,* 137 U. S. 624; *McNulty* v. *California,* 149 U. S. 645.

Moreover, the order from which the appeal was taken was

not a final decision of the Circuit Court of the United States for the District of New Jersey, but was an order of the circuit judge at chambers, and an appeal from such an order will not lie. Rev. Stat. §§ 763, 764; Act of March 3, 1885, c. 353, 23 Stat. 437; *Carper* v. *Fitzgerald,* 121 U. S. 87; *In re Lennon,* 150 U. S. 393; *McKnight* v. *James,* 155 U. S. 685.

*Appeal dismissed.*

# APPENDIX.

## CHIEF JUSTICE TANEY TO MR. CHASE.

### SUPREME COURT OF THE UNITED STATES.

#### DECEMBER TERM, 1862.

#### ORDER OF COURT.

#### TUESDAY, MARCH 10, 1863.

Ordered, upon the request of the Chief Justice, that the following letter from him to the Secretary of the Treasury be entered on the records of the court:

WASHINGTON, FEBRUARY 16, 1863.

SIR: I find that the act of Congress of the last session imposing a tax of three per cent on the salaries of all officers in the employment of the United States, has been construed in your department to embrace Judicial Officers, and the amount of the tax has been deducted from the salaries of the judges.

The first section of the third article of the Constitution provides that "The judicial power of the United States shall be vested in one Supreme Court, and such inferior courts as Congress may from time to time ordain and establish. The judges of both the Supreme and Inferior Courts shall hold their offices during good behavior, and shall at stated times receive for their services a compensation which shall not be diminished during their continuance in office."

The act in question, as you interpret it, diminishes the compensation of every judge three per cent, and if it can be diminished to that extent by the name of a tax, it may in the same way be reduced from time to time at the pleasure of the legislature.

701

The Judiciary is one of the three great departments of the government, created and established by the Constitution. Its duties and powers are specifically set forth, and are of a character that requires it to be perfectly independent of the two other departments, and in order to place it beyond the reach and above even the suspicion of any such influence, the power to reduce their compensation is expressly withheld from Congress, and excepted from their powers of legislation.

Language could not be more plain than that used in the Constitution. It is moreover one of its most important and essential provisions. For the articles which limit the powers of the legislative and executive branches of the government, and those which provide safeguards for the protection of the citizen in his person and property, would be of little value without a judiciary to uphold and maintain them, which was free from every influence, direct or indirect, that might by possibility in times of political excitement warp their judgments.

Upon these grounds I regard an act of Congress retaining in the Treasury a portion of the compensation of the judges, as unconstitutional and void; and I should not have troubled you with this letter, if there was any mode by which the question could be decided in a judicial proceeding. But all of the judges of the courts of the United States have an interest in the question, and could not therefore with propriety undertake to hear and decide it. I am, however, not willing to leave it to be inferred from my silence that I admit the right of the legislature to diminish in this, or any other mode, the compensation of the judges when once fixed by law; and my silence would naturally — perhaps necessarily — be looked upon as acquiescence on my part in the power claimed and exercised under this act of Congress; and would be regarded as a precedent, establishing the principle that the legislature may at its pleasure regulate the salaries of the judges of the courts of the United States, and may reduce their compensation whenever Congress may think proper.

Having been honored with the highest judicial station under the Constitution, I feel it to be more especially my duty to uphold and maintain the constitutional rights of that department of the government, and not by any act or word of mine, leave it to be supposed that I acquiesce in a measure that displaces it from the independent position assigned it by the statesmen who framed the Constitution; and in order to guard against any such inference,

I present to you this respectful but firm and decided remonstrance against the authority you have exercised under this act of Congress, and request you to place this protest upon the public files of your office as the evidence that I have done everything in my power to preserve and maintain the Judicial Department in the position and rank in the government which the Constitution has assigned to it.

I am, sir, very respectfully yours,

R. B. TANEY.

HON. S. P. CHASE,
  *Secretary of the Treasury.*